# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER REED,

    Plaintiff

    v.

CRAIG HARPSTER, et al.,

    Defendants

CIVIL NO. 3:CV-09-1618

(Judge Caputo)

## MEMORANDUM

I.    Introduction

Plaintiff, Christopher Reed, an inmate presently confined at the Rockview State Correctional Institution (SCI-Rockview), Bellefonte, PA, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 relating to the events of July 25, 2008, when he was assaulted by his cellmate, Michael Lacava. Mr. Reed claims that despite Lacava's known history of resorting to violence if housed with another inmate, defendants failed to protect him from harm when they assigned Lacava to his cell. He also asserts that numerous defendants conspired to cover up Lacava's known history of violence, and the known threat he posed to Mr. Reed.

Named as defendants are the following Pennsylvania Department of Corrections (DOC) employees: Superintendent Franklin J. Tennis; Deputy Superintendent Brian H. Thompson; Deputy Superintendent Robert J. Marsh; Major James D. Morris; Grievance Coordinator Jeffrey Rackovan; Acting Chief Hearing Officer Dorina Varner; and Unit Manager Craig Harpster. Mr. Reed also names

inmate Michael Lacava, BN-6743, as a defendant. Plaintiff has filed a motion for leave to proceed *in forma pauperis*.

The Complaint is presently before the Court for screening pursuant to 42 U.S.C. § 1983. As inmate Lavaca is not a state actor pursuant to 42 U.S.C. § 1983, the complaint will be dismissed against him. Further, as Mr. Reed fails to state a claim against the other DOC employees except for Unit Manager Harpster, the complaint will be dismissed against them without prejudice. Mr. Reed will be given the opportunity to file an amended complaint or proceed on the sole remaining claim, an Eighth Amendment failure to protect claim, against Unit Manager Harpster.

II. Background.

The complaint alleges the following. Mr. Reed is presently serving a life sentence at SCI-Rockview. (Doc. 1, Compl.) On July 24, 2008, inmate Lacava was "moved into" Mr. Reed's cell.[1] Lacava advised Mr. Reed that he was "Z Coded"[2] and that he was going to speak with Unit Manager Harpster about being placed in a single cell. (*Id.*) Upon his return from speaking to Mr. Harpster, inmate Lacava advised Mr. Reed that his requests for a "Z code" and "to move into a single cell" were denied. (*Id.* at R. 5.) Lacava reported that he warned Unit Manager Harpster that if he was not given a single cell he "was going to lump up his cellie". (*Id.*)

---

[1] This move coincided with Lacava's release from the institution's Restricted Housing Unit (RHU). Lacava was placed in the RHU after he was found guilty of concealing a weapon in his single cell. (*Id.* at 5.)

[2] The classification "Z" code denotes a housing designation that indicates an inmate is to be celled alone, i.e., the inmate is not to be double celled.

The following day, Lacava assaulted Mr. Reed "without conversation nor provocation." (*Id.*) Lacava advised Mr. Reed not to fight back but to "just get an officer." (*Id.*) Mr. Reed left the cell and immediately reported the assault to the unit officers. While Mr. Reed was being escorted to the medical unit for treatment, Lt. Toraello and CO Rupert extracted Lacava from Mr. Reed's cell.

As a result of the assault, Mr. Reed required stitches inside his left ear and received a cut under his left eye. Mr. Reed's eyeglasses and denture plate were also destroyed during the assault. Upon receiving medical treatment, Mr. Reed was escorted to Lt. Vance's office. In response to Mr. Reed's inquiry, the unidentified escorting officer reported that Lacava stated that he was "not taking any cellies." (*Id.*)

Mr. Reed claims Unit Manager Harpster ignored the known threat Lacava presented to his health and safety when knew of Lacava's violent history, past refusal to double cell, and his failure to remove Lacava or himself from the cell after Lacava threatened to "lump up" his cellmate if he was forced to double cell with Mr. Reed. (*Id.* at R. 6.) Mr. Reed also accuses Harpster of initiating a conspiracy to cover up the true facts of this case by providing false information regarding Lacava's history of assaults and violent nature as well as the assault itself. (*Id.*) Major Morris, Superintendent Tennis, and Dorina Varner are all alleged to have participated in the conspiracy to cover up the true facts of this case as a result of their various responses to Mr. Reed's administrative grievance regarding the assault. (*Id.*) Deputy Superintendent Marsh is also alleged to have participated in "this conspiracy

-3-

and cover up of the true facts in this case" by his knowledge of Lacava's assaultive nature and his failure to protect Mr. Reed and others from Lacava. (*Id.*) Jeffrey Rackovan is also alleged to have participated in the conspiracy and cover up as a result of his failure to protect Mr. Reed and others from Lacava whom he knew to be a violent inmate. (*Id.* at R. 7.)

Mr. Reed claims inmate Lacava is known throughout SCI-Rockview and the DOC for his preference for a single cell and his assault of his cellmates when double celled with another inmate. (*Id.*)

Aside from identifying Deputy Superintendent Thompson as a defendant, Mr. Reed does not make any specific allegations as to his involvement in the events leading up to, during or after the July 25, 2008, assault.

III. Standard of Review

Under 28 U.S.C. § 1915(e)(2)(B)(ii), the court must dismiss a case filed *in forma pauperis* if we determine that it "fails to state a claim on which relief may be granted." In applying this statutory requirement, the court relies on the standard employed to analyze motions to dismiss under Fed. R. Civ. P. 12(b)(6). That Rule authorizes dismissal of a complaint, or a portion thereof, on basically the same ground, "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v.*

-4-

UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d. 929 (2007), a complaint has to plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570, 127 S.Ct. 1955 at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, __ U.S. __, __, 129 S.Ct. 1937, 1949 (2009)(quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id., 127 S.Ct. at 1965 (quoted case omitted).

IV. Discussion

    A. Claims against Inmate Michael Lacava.

An essential element of a 42 U.S.C. § 1983 action is that the alleged constitutional deprivation was committed by a person acting under color of state law. Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); Natale v. Camden County Corr. Facility, 318 F.3d 575, 580-81 (3d Cir. 2003). Based on a review of the instant complaint, it is clear that inmate Michael Lacava is not a state actor, nor does the complaint allege that any actions taken by this individual can in any way be attributed to the State. The court, therefore, concludes that Plaintiff's

complaint against his fellow inmate is frivolous on the basis that Lacava is not a state actor. Accordingly, Plaintiff's claim against this defendant is subject to summary dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

B.  Failure to Protect Claims.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003)(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988)). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. *Rode*, 845 F.2d at 1207-08; *see Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). It is also well established that liability in a civil rights action cannot be predicated solely on the doctrine of *respondeat superior*. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*)(citing *Rode*, 845 F.2d at 1207). "Supervisors may be held liable under § 1983 for constitutional violations of their subordinates if it is shown that they, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Tsakonas v. Cicchi*, No. 07-4115, 2009 WL 500567 at *3 (3d Cir. Jan. 30, 2009)(internal citations and quotations omitted); *see also Sample v. Diecks*, 885 F.2d 1099, 1117-118 (3d Cir. 1999)(supervisory liability may attach if supervisor's actions or inactions were the "moving force" behind the harm suffered by the plaintiff). Thus, individual liability can be imposed

under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *Rode, supra.* Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

The Third Circuit Court of Appeals requires a defendant's contemporaneous, personal knowledge and acquiescence, in order to establish personal knowledge. After the fact knowledge will not suffice. Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement. *See Rode*, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *Brooks v. Beard*, 167 Fed. Appx. 923, 925 (3d Cir. 2006)(nonprecedential)(holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); *see also Burnside v. Moser*, 138 Fed. Appx. 414, 416 (3d Cir. 2005)(failure of prison official to process administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation grieved).

As Mr. Reed does not state any personal involvement of Deputy Superintendent Brian H. Thomspon with respect to an alleged violation of any of his constitutional rights, this Defendant will be dismissed. Likewise, as Mr. Reed's failure to protect claims against the remaining defendants, except for Unit Manager Harpster, are subject to dismissal as they are not suggested to have known of, or

-7-

participated in, the decision to house Lacava with him in advance of the July 25, 2008, assault. There are no allegations that any defendant, other than Unit Manager Harpster, knew of and disregarded an excessive risk of harm to Plaintiff's safety. Mr. Reed does not state that any of the other defendants were aware he was to be housed with Lacava in advance of the assault or that they were otherwise responsible for assigning Lacava to cell with him. Thus, Mr. Reed fails to state an Eight Amendment failure to protect claim against Superintendent Franklin J. Tennis, Deputy Superintendent Robert J. Marsh, Major James D. Morris, Grievance Coordinator Jeffrey Rackovan, and Acting Chief Hearing Officer Dorina Varner. The complaint is clear that their involvement came after the alleged constitutional injury and thus neither they can be held to be personally involved in the alleged unconstitutional events. As pled, only Mr. Reed's Eighth Amendment failure to protect claim against Unit Manager is adequately set forth to survive screening the screening process.

C. Conspiracy Claims.

A conspiracy claim brought under section 1983 requires proof of an agreement or meeting of the minds to violate constitutional rights, and an actual deprivation of constitutional rights. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy. See Royster v. Beard, 308 Fed. Appx. 576, 579 (3d Cir. 2009)(citing Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993).

-8-

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy. However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. ..." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965 (citation omitted). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. ..." *Id.*, at 555-56, 127 S.Ct. at 1964-65 (internal quotations and citations omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim hat is plausible on its face.'" *Iqbal*, ___ U.S. ___, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

In this case, Mr. Reed states that defendants participated in a conspiracy to cover up the facts leading to his assault, and of the assault itself. (Doc. 1, Compl.) Unit Manager Harpster is said to have initiated the conspiracy which the other defendants joined. Plaintiff alleges that Major Morris, Superintendent Tennis, and Dorina Varner conspired together, after the assault, to cover up the details surrounding the assault, as evidenced by their response and denials of his prison grievance regarding the matter. Characterizing Plaintiff's disappointment in the outcome of the grievance process as a viable conspiracy claim is like forcing a square peg into a round hole. This simply cannot be done. Likewise, conclusory allegations that Deputy Superintendent Marsh and Jeffrey Rackovan allegedly participated in "this conspiracy and cover up of the true facts in this case" by his knowledge of Lacava's assaultive nature and his failure to protect Mr. Reed from Lacava are insufficient to state a viable conspiracy claim. The facts as pled do not

-9-

permit the Court to infer more than a mere possibility of a conspiracy by any of the defendants and thus do not give rise o an entitlement to relief. Plaintiff alleges nothing that tends to support the existence of the alleged conspiracy other than the unfavorable outcome of his institutional grievance. In light of the foregoing, the Court concludes that Plaintiff's bare allegations of a conspiracy are insufficient to support a claim for relief under 42 U.S.C. § 1983.

V. Conclusion

Plaintiff's failure to protect and conspiracy claims against Superintendent Franklin J. Tennis, Deputy Superintendent Brian H. Thompson, Deputy Superintendent Robert J. Marsh, Major James D. Morris, Grievance Coordinator Jeffrey Rackovan, and Acting Chief Hearing Officer Dorina Varner are dismissed for failure to state a claim. The Court will provide Mr. Reed with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order.

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only against Unit Manager Harpster, Plaintiff may so notify the Court in writing, and his other claims will be dismissed for failure to state a claim.

If Plaintiff opts to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of his constitutional or other federal rights. *Iqbal*, at 1948-49. Although accepted as true, the "factual allegations must be [sufficient] to raise a right to relief above the speculative level ..." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965 (citations omitted). Finally, an amended complaint supercedes the original complaint and

must be "retyped or reprinted so that it will be complete in itself including exhibits." Pa. M.D. Local Rule 15.1. Therefore, all causes of action alleged in an original complaint which are not alleged in an amended complaint are waived.

If Plaintiff fails to file an amended complaint or notify the Court of his election to proceed on the sole claim against Unit Manager Harpster, the Court will dismiss the action against all defendants for failure to state a claim and direct the United States Marshal to initiate service of process on the sole remaining defendant.

An appropriate order will follow.

A. RICHARD CAPUTO
United States District Judge

Date: January 7, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER REED,

    **Plaintiff**

v.

CRAIG HARPSTER, *et al.*,

    **Defendants**

CIVIL NO. 3:CV-09-1618

(Judge Caputo)

## ORDER

AND NOW, this __7th__ day of **January**, 2010, upon review of the Complaint under 28 U.S.C. § 1915(e)(2)(B), it is ordered that:

1. All claims against inmate Michael Lacava are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

2. The Clerk's Office shall sent Plaintiff two copies of this Court's civil rights complaint form;

3. Within thirty (30) days from the date of service of this order, Plaintiff must either:

   A. File an amended complaint curing the deficiencies identified by the Court in this order, or;

   B. Notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed solely on his Eighth Amendment failure to protect claim against Unit Manager Harpster.

4. If Plaintiff fails to comply with this Order, the Court will dismiss the action against all DOC defendants except for Unit Manager Harpster and direct service on this defendant alone.

/s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**